**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.A., D.A., and R.N.**

**No. 21-0599** (Hampshire County 20-JA-85, 20-JA-86, and 20-JA-87)

**MEMORANDUM DECISION**

Petitioner Father V.A., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's April 9, 2021, order terminating his parental rights to R.A., D.A., and R.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Joyce E. Stewart, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his improvement period and his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2020, the DHHR filed a child abuse and neglect petition against petitioner and A.B., the mother of R.A. and D.A., based upon allegations of drug abuse. Specifically, the DHHR alleged that, at the time of D.A.'s birth, A.B. tested positive for fentanyl, amphetamines, and benzodiazepines, and the hospital reported concerns that A.B. was actively using drugs during her hospital stay. The DHHR alleged that the child tested positive for fentanyl, amphetamines, and benzodiazepines and was given Morphine and Clonidine to help with opiate withdrawal. A Child Protective Services ("CPS") worker interviewed a nurse who stated that, after A.B. was discharged from the hospital, both she and petitioner returned to visit D.A. who remained in the hospital, but that petitioner slept throughout the visit. The DHHR alleged that a CPS worker conducted a home

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

visit, and that petitioner and A.B. reported attending a medically assisted treatment program but denied other drug use. Lastly, the DHHR alleged that petitioner was delinquent on child support payments for R.N.

Later that month, the circuit court held a preliminary hearing wherein petitioner waived his right to contest the evidence. Petitioner further admitted that if he were to submit to a drug screen, he would be positive for methamphetamine, fentanyl, and prescribed buprenorphine. The circuit court granted petitioner and A.B. visits with the children contingent upon clean drug screens.

The DHHR filed an amended petition later in September of 2020, alleging that petitioner placed the children at risk with his continued substance abuse. The DHHR also alleged that petitioner was granted only supervised visits with the child R.N. in 2018 in a family court case due to his substance abuse, and that he emotionally neglected the child by not being a consistent parental figure in R.N.'s life. According to the DHHR, petitioner had not seen the child since July of 2019, and his contact with him had been infrequent since 2016.

In October of 2020, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations of abuse contained in the petition. Specifically, petitioner stipulated to pervasive drug use which detrimentally affected the children and petitioner's ability to care for the children. Petitioner also stipulated to making only sporadic child support payments and a lack of contact with R.N., which resulted in emotional abuse. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and granted him a post-adjudicatory improvement period.

The circuit court held a status hearing in January of 2021. A CPS worker testified that petitioner relapsed on methamphetamine and fentanyl in December of 2020 and that visits with the children were suspended as a result. Petitioner admitted to relapsing, and the circuit court ordered that visits could be resumed if petitioner submitted negative drug screens for two consecutive weeks. Subsequently, the DHHR filed a motion to terminate petitioner's improvement period due to his continued drug use, and the circuit court held a hearing on the motion in February of 2021. A service provider testified that petitioner tested positive for methamphetamine in December of 2020. Further, petitioner tested positive for drugs three times in January of 2021, including for substances such as norfentanyl, a metabolite for cocaine, and methamphetamine. Thereafter, petitioner failed to submit to three screens. A CPS worker testified that petitioner failed to maintain employment throughout the proceedings, continued to test positive for drugs, and concealed his drug dealer's identity.

Petitioner testified that he was willing to attend a drug rehabilitation program. Petitioner explained that he had not been working during the proceedings due to medical conditions, including a botched vasectomy and oral surgery. After hearing testimony, the circuit court terminated petitioner's improvement period. The circuit court noted that it had previously admonished petitioner about his drug use but, since that time, he had a number of additional positive tests for drugs ranging from methamphetamine to a cocaine metabolite.

In March of 2021, the circuit court held a dispositional hearing and took judicial notice of the testimony presented at prior hearings. Petitioner failed to appear but was represented by

counsel. R.N.'s mother testified that petitioner failed to consistently pay child support and had not seen the child since the summer of 2019. A CPS worker testified that, since the last hearing, petitioner continued to test positive for drugs, including for fentanyl and methamphetamine at a screen in February of 2021. Additionally, earlier in March of 2021, petitioner's urine screen was positive for buprenorphine and fentanyl, and petitioner admitted to heroin use at the time of the screen. At another screen that same month, petitioner tested positive for a cocaine metabolite. However, petitioner ceased submitting to screens after March 9, 2021.

A CPS worker testified that the DHHR recommended termination of petitioner's parental rights. The CPS worker expressed that there were significant safety concerns with the amount and type of drugs petitioner continued to use and noted that he failed to avail himself of services. The CPS worker admitted that petitioner had attended a detoxification program but stated that he continued to test positive for drugs following his completion of the program. The CPS worker further stated that, due to petitioner's continued drug use, his visits with the children were suspended. Although petitioner attended some parenting and adult life skills classes, he was not receptive to the content being taught and did not finish the program.

At the close of the hearing, the circuit court found that "really the only consistency in this case by the parents has been that they continue to test positive through basically to date [for] such substances as fentanyl, cocaine, heroin, and meth, among other things." The circuit court found that petitioner was playing a "deadly game" and had abandoned the case, given his failure to appear at the hearing or maintain contact with his counsel. The circuit court found that petitioner's drug use was so severe that it precluded him from participating in the proceedings or availing himself of services. The circuit court noted that, while petitioner attended parenting and adult life skills classes, it had "absolutely no positive effect" on him. The circuit court further found that petitioner failed to provide child support for, or have any meaningful contact with, R.N. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's April 9, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

---

[2]A.B.'s parental rights to R.A. and D.A. were also terminated below. The permanency plan for those children is adoption by a family member. R.N.'s mother was deemed nonabusing, and the permanency plan for the child is to remain in his mother's care.

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his improvement period and in terminating his parental rights. Petitioner contends that the circuit court erred in finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future "in the absence of a full opportunity for the Petitioner to complete his improvement period." Petitioner cites to his testimony at the review hearing wherein he described the many medical issues he allegedly suffered during the proceedings. Petitioner argues that, given these issues, it was an "unsustainable finding" that petitioner was "unmotivated" to comply with his improvement period. He further argues that it is "inconceivable to expect that a person could overcome a long-standing drug issue and secure gainful employment while prescribed pain medication following . . . surgeries." As such, petitioner argues that the circuit court prematurely terminated his improvement period and determined that he could not remedy the conditions of abuse and neglect.

Pursuant to West Virginia Code § 49-4-610(7), "[u]pon the motion by any party, the court shall terminate any improvement period granted pursuant to this section when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." Additionally, this Court has held that

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

Here, the record overwhelmingly supports the circuit court's findings related to petitioner's failure to fully participate in his improvement period and his ultimate failure to successfully complete the same. While petitioner blames his lack of participation on his medical conditions during the proceedings, he fails to cite to any portion of the record demonstrating that he provided any documentation confirming that he had these conditions or underwent any surgeries. Rather, petitioner simply offered his own self-serving testimony in support. The circuit court heard petitioner's testimony and assessed its weight accordingly. On appeal, we decline to disturb the court's credibility determination with regard to this testimony. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

4

Further, petitioner failed to comply with any aspect of his improvement period. Petitioner continued to test positive for drugs such as fentanyl, a cocaine metabolite, and methamphetamine, even after the circuit court warned him that his continued usage would result in the termination of his improvement period. Importantly, petitioner's drug use resulted in his inability to visit with the children. This Court has "previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Further, petitioner failed to maintain employment and failed to meaningfully participate in parenting and adult life skills classes. Accordingly, we find no error in the circuit court's termination of petitioner's improvement period as it is clear that he failed to fully comply with the terms and conditions of the same.

The evidence, as set forth above, likewise supports the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. As noted above, petitioner was provided an improvement period with services, including parenting and adult life skills classes and a drug rehabilitation program. However, petitioner failed to meaningfully comply with services and continued to test positive for a variety of extremely dangerous drugs. Indeed, petitioner tested positive for fentanyl, a cocaine metabolite, and methamphetamine following the review hearing and failed to appear at his dispositional hearing. The circuit court described petitioner's drug use as a "deadly game" and found that he abandoned the case, given his failure to appear and to maintain contact with his counsel. The circuit court further found that petitioner's participation in parenting and adult life skills classes had "absolutely no positive effect" on him. These findings are sufficient to support the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

To the extent petitioner argues that he should have been given more time to comply with services, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be

5

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, it is clear that petitioner was unable to solve the problems of abuse or neglect on his own or with the help of the DHHR and, thus, termination of his parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 9, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton